UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL ALLEN WORLEY,

     APPELLANT,

                                     CIVIL ACTION

VERSUS

                                     3:19-CV-489-JWD-EWD

CALLAIS CAPITAL MANAGEMENT, LLC

     APPELLEE.

RULING AND ORDER AFFIRMING BANKRUPTCY COURT

THIS MATTER is before the Court on an Appeal of the United States Bankruptcy Court for the Middle District of Louisiana's final judgment in Adversary Proceeding No. 18-1021 filed by Michael Allen Worley ("Appellant" or "Worley"). (Doc. 1.) Appellant filed an *Appeal Brief of Appellant, Michael Allen Worley* ("*Appellant Brief*"). (Doc. 6.) Callais Capital Management, LLC ("Appellee" or "Callais") filed a response entitled *Brief of Plaintiff/Appellee, Callais Capital Management, LLC* ("*Appellee Brief*"). (Doc. 7.) Pursuant to Fed. Bankr. R. 8019(b)(3), and the parties' waiver of oral argument, the Court concludes that oral argument is not necessary. Having reviewed the briefs, the record on appeal, the reasons expressed by the Bankruptcy Court, and the law, the Court will affirm the decision of the Bankruptcy Court.

PROCEDURAL HISTORY

Worley filed an individual Chapter 11 bankruptcy case on January 8, 2018. (Doc. 1 in Bankruptcy Case No. 18-10017.) Callais is a creditor in Worley's bankruptcy case and filed an adversary proceeding seeking to declare the debt Worley owed Callais non-dischargeable under 11 U.S.C. 523(a)(2)(B). (Doc. 1 in Adversary Proceeding No. 18-1021.) Callais filed a *Motion for Summary Judgment Against Michael Allen Worley Pursuant to 11 U.S.C. § 523 (a)(2)(B)*

("*Motion*"). (Doc. 39 in Adversary Pro. 18-1021). Worley opposed the *Motion*. (Docs. 45 & 46 in Adversary Pro. 18-1021.) On May 22, 2019, the Bankruptcy Court held a hearing and heard arguments on the *Motion*. (Doc. 65 in Adversary Pro. 18-1021.) At the May 22, 2019 hearing, the Bankruptcy Court granted the *Motion* and gave oral reasons explaining its decision. *Id.* Summary Judgment in favor of Callais was entered on June 10, 2019. (Doc. 61 in Adversary Pro. 18-1021.) On June 21, 2019, Worley filed the *Notice of Appeal*, which asks the Court to review the Bankruptcy Court's decision on summary judgment. (Doc. 63 in Adversary Pro. 18-1021.)[1]

## FACTS

When Worley filed his bankruptcy case, he controlled numerous business entities including SQOR, Inc. and W Resources, LLC. (Doc. 39-4 in Adversary Pro. 18-1021 at 25:1-3.) Michael Hammer ("Hammer") was Worley's representative in dealing with Callais to obtain financing for himself and the personal entities he controlled. (*Id.* at 34:17-21.) Worley worked with Hammer to create a "global recapitalization" of his existing debts. (*Id.* at 51:15-16.) Worley was successful at obtaining financing. As of the date that Debtor filed his bankruptcy case, Worley owed Callais $28,847,447.80. The total indebtedness came from Worley's unconditional personal guarantee of Callais' loans to SQOR ("Unconditional SQOR Guarantee") and from his personal loans from Callais. (*Id.* at 43:16-24.)

When Worley was seeking personal financing from Callais, he engaged the Hannis T. Bourgeois accounting firm ("Accounting Firm") to compile a global financial statement ("Financial Statement"). (*Id.* at 34:17-21.) Worley signed an engagement letter with the Accounting Firm in which he agreed that accuracy of the financial statement was his sole and

---

[1] The Court notes that Michael Worley, the Debtor in this case, pled guilty to bank fraud and wire fraud in this Court. (Criminal Case No. 19-164.) The Court discussed with counsel the fact that both the appeal and the criminal case were pending before the Court and was told that counsel had no objection. (Case No. 19-489, Doc. 13.) In affirming the bankruptcy court, this Court has only reviewed the record on appeal.

exclusive responsibility, and that he was obligated to furnish the Accounting Firm with accurate information regarding his assets and liabilities. (Doc. 39-9 at 35:7-41:7.) Worley sent the Accounting Firm documentation concerning his net worth that was used to draft the Financial Statement. (Doc. 39-9 at 34:15-20; 21:6-10; 41:8-42:2; 42:10-13.) The Financial Statement was sent by email to Worley on March 4, 2016. (Doc. 39-9 at 19.) Also on March 4, 2016, Worley sent the Accounting Firm a letter certifying that all information provided and representations made by Worley for drafting the Financial Statement were true and correct ("Certification Letter". (Doc. 39-9 at 50-51; 55-56.)

Worley admitted he lied on the Certification Letter and that the Financial Statement was materially false. (Doc. 39-4 at 110:5-113:10; and 67-86.) The Financial Statement omitted millions of dollars in debt and incorrectly listed some assets, including mineral rights and subsidiary inventory, as unencumbered when, in fact, they served as security for other indebtedness. (*Id.*) Even though he was aware of the falsity of the Financial Statement, Worley sent the Financial Statement to Hammer, who as Worley's "go-between" with Callais and cognizant of Worley's need for financing, sent the Financial Statement to Callais. (Doc. 39-4 at 52.) Worley knew Hammer was seeking financing on his behalf. (Doc. 39-4 at 51.) On March 7, 2016, Hammer forwarded an email to Worley that included a page from the Financial Statement and asked Worley for a follow up call. (Doc. 39-3 at 65.) As such, Worley knew on March 7, 2016 that Hammer had shared the Financial Statement with prospective lenders. (*Id.*) On March 29, 2016, Hammer forwarded Callais the email from the Accounting Firm with the Financial Statement attached. (Doc. 39-3 at 65.) Hammer's email to Callais stated, "Gentlemen, attached is a (12-31-15) PFS for Mike Worley. *The $3MM CCM loan is not reflected on his statement.*" (*Id.*)

STANDARD ON REVIEW

The Court reviews the Bankruptcy Courts decision to grant summary judgment *de novo*. *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 123 (5th Cir. 2017) The Court "may affirm on any ground raised below and supported by the record, even if the [bankruptcy] court did not reach it." *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 810 (5th Cir. 2016).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant must "go beyond the pleadings" and submit competent evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

The Fifth Circuit has further explained:

4

In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

DISCUSSION[2]

a. *Bankruptcy Court's Ruling*[3]

The Bankruptcy Court granted summary judgment for the Appellee, maintaining that there were no genuine disputes of material facts as to each element 11 U.S.C. § 523(a)(2)(B). As a threshold issue, the Bankruptcy Court determined that Callais had proven that Hammer was Worley's agent, explaining:

> The debtor proffers an affidavit swearing that Hammer is not his agent to create an apparent material fact dispute in order to defeat Callais' motion, but the debtor's self-serving affidavit testimony directly conflicts with his earlier sworn deposition testimony in which he unequivocally stated that Hammer was his representative and even his agent in dealing with creditors in securing the loans. Again, I cite to his deposition, Page 34, Lines 19 through 21, and Page 32 – I'm sorry Deposition Page 125, Lines 17 through 21.

> The Fifth Circuit's been very clear that a party cannot gin up a genuine issue of material fact by swearing out an affidavit that contradicts his previous sworn statements. "It is well settled that the court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches without explanation sworn testimony." That's a 1996 Fifth Circuit opinion in the matter *S.W.S Erectors, Incorporated v. Infax, Incorporated*, reported at 72 F.3d 489, specifically Page 495. As the plaintiffs pointed out in in its motion and supporting memoranda, Worley testified repeatedly that Hammer was his representative engaged in the process of seeking loans for both Mr. Worley and his enterprises. He cannot now claim that Hammer was not his agent in order to defeat summary judgment. Citation also to *Albertson v. T.J. Stevenson & Company*, 749 F.2d 223, specifically Page 228, a Fifth Circuit opinion from 1984.

---

[2] To the extent that the Court does not address an argument raised by the parties, the Court did not find that argument to be persuasive.

[3] The Court notes that the transcript of the Oral Reasons, as a typographical error, references "Score" instead of "SQOR" as one of Worley's business ventures.

(Doc. 3-2, Oral Reasons, 21:4-22:5.) The Bankruptcy Court likewise found that Hammer had the

apparent authority to transmit the Financial Statement to Callais, stating

> To determine where someone is cloaked with apparent authority, a court must
> examine whether the principal's actions viewed from the point of view of a third
> party give rise to an agency relationship. The citation is *Capital One Bank v.*
> *Walters*. Its from the bankruptcy, *In re Walters*, Eastern District of Louisiana
> Bankruptcy Court opinion of April 14, 2010, reported at 2010 WL 1531084, *6.
>
> Hammer conveyed to Callais, a prospective lender that wanted a personal guaranty
> from Worley, a professionally prepared financial statement that Worley gave to
> Hammer. As Callais points out, even if Hammer was not authorized to distribute
> the final statement, as the debtor now claims that fact is irrelevant. The question is
> whether an innocent third party would believe that as Worley's agent seeking
> financing on Worley's behalf Hammer would be authorized to release the debtor's
> financial statement. There is no doubt that the answer here is yes.
>
> The parties had a history of Hammer negotiating loans on Worley's behalf. Worley
> never communicated to Callais or other potential lenders that Hammer was not
> authorized to act on his behalf and additionally, given that Callais was only willing
> to lend money if Worley personally guaranteed the loan, Callais reasonably relied
> on the professionally prepared financial statement it received from Hammer,
> Worley's agent. I point the parties to Document 39 in the record, Exhibit C, Page 5
> Paragraph 22.

(Doc. 3-2, Oral Reasons, 23:16-24:16)

Applying the elements under 11 U.S.C. § 523(a)(2)(B); first, the Bankruptcy Court found

that the Financial Statement was a statement in writing that is materially false respecting the

debtor's financial condition. (Doc. 3-2 at 22:15-22.) Second, the Bankruptcy Court detailed that

Callais' reliance on the Financial Statement was reasonable because:

> [T]he debtor argues that Callais is not entitled to summary judgment because it
> disregarded red flags it should have heeded; thus, rendering its reliance on the
> financial statement not reasonable. The debtor first argues that there's a glaring
> omission from the financial statement that does not contain secured debt W
> Resources owed to Callais that Worley previously had guaranteed. That argument's
> nearly frivolous. An electronic mail message from Hammer to Callais with the
> financial statement notes, "The $3 million CCM loan is not reflected on this
> statement." That's from the defendant's opposition to the motion for summary
> judgment, Document 45 in the record, Exhibit 4. Worley's agent called the debt and
> guaranty to Callais I attention. So it is not a red flag within the meaning of the
> jurisprudence that should have prompted Callais to investigate further. The debtor

next suggests that the omission of the debtor's airplane from the financial statement is a red flag because Callais representatives had flown on the plane and knew of its existence. Considering the debtor's numerous assets in several states with a value he claimed to exceed $100 million, the omission of the plane was *de minimis* comparatively and certainly not a red flag. Nor was the financial statement's failure to clearly distinguish between Worley and his companies a red flag. The financial statement represented Worley's net worth and reasonably set out the value of companies in which he has an, had an interest or for which he guaranteed debt.

(Doc. 3-2, Oral Reasons, 24:17-25:20.)

Last, the Bankruptcy Court detailed that the totality of the circumstances showed Worley acted with a reckless disregard for the truth sufficient to produce an inference that he possessed intent to deceive within the meaning of § 523(a)(2)(B). The Bankruptcy Court explained:

Callais argues that Worley displayed "a shocking pattern of reckless conduct," its words, amounting to a reckless indifference sufficient to prove his intent to deceive. In support of its argument, Callais points to deposition testimony of Michael Worley in which he said (1) he never read the certification letter he submitted to Hannis T. Bourgeois, his certified public accountants, upon their completion of the financial statement in which Worley falsely certified the truth and accuracy of all the information he provided the accounting firm. That's his deposition, Page 106, Lines 15 and 16, and Page 107, Lines 13 through 23.

Also, that he never read the mortgage he signed purporting to mortgage property to Callais that he did not even, that he did not own. Once again, Deposition Page 31, Lines 7 through 10.

And finally, he never read the unconditional guaranty that Callais had him to sign before continuing to loan money to Score. That is Deposition Page 45, Lines 9 through 21.

The debtor defends by claiming that Callais cannot prove Worley even knew Callais had been given the financial statement and so cannot prove his intent to mislead it. Callais's response is that the debtor knew as early as March 7, 2016 that Michael Hammer was sharing the debtor's financial statement with potential lenders and took no remedial action. The reference to that is Document 39 in the record, Exhibit A, PDF Page 63.

In summary, Callais has shown the debtor acted with reckless disregard for the truth sufficient to produce an inference that he possessed intent to deceive within the meaning of section 523 (a) (2) (B). I cite again to *Morrison v. Western Builders of Amarillo*, specifically Page 482.

(Doc. 3-2, Oral Reasons, 26:8-27:13.)

b. *Parties' arguments*

1. Appellant's arguments

Appellant argues that summary judgment was not appropriate because in the Bankruptcy

Court there were genuine disputes of material facts. Specifically, Appellant asserts that the

Bankruptcy Court,

> should have sought the answers to several questions through trial of this matter,
> namely: (i) was Michael Hammer authorized to give Callais Capital the financial
> statement of Worley?; (ii) why was Worley not copied with the transmittal letter
> with which he sent the financial statement to Callais Capital?; and, (iii) was Callais
> Capital justified in relying on the obviously incomplete Financial Statement when
> it should have recognized red flags indicating that the statement left off significant
> asset and debts?

(Doc. 6 at 11.) Therefore, Appellant challenges whether the Bankruptcy Court correctly

determined (1) that Hammer was Worley's agent for the purpose of obtaining personal financing;

(2) whether Callais' reliance on the Financial Statement was reasonable; and (3) whether Worley

had the requisite intent to deceive. (Doc. 6 at 11-13.)

First, as to whether Hammer was Worley's agent for the purpose of finding personal

funding and therefore authorized to send the Financial Statement, Appellant argues:

> Worley agrees that Hammer acted as his agent with regard to certain transactions
> for himself and for his company W Resources, LLC. However, he adamantly
> disputes that Hammer acted as his agent in connection with the loan from Callais
> Capital to SQOR which is the basis for the subject adversary proceeding. Hammer
> was SQOR's agent for these loans, billed SQOR and was paid by that company.
> While Worley's company, W Resources, LLC, paid Hammer's fee for transactions
> involving that company and Callais Capital, Hammer billed SQOR, not Worley or
> W Resources, LLC, for his work in the Callais Capital loan to SQOR.

(Doc. 6 at 13.)

Second, as to whether Callais' reliance was reasonable, Appellant asserts that Callais'

reliance was not reasonable because of the "red flags" present on the Financial Statement.

Specifically, Appellant argues:

8

First of all, Callais Capital should have recognized that Worley was not copied with the transmission of the Financial Statement . . . No representative of Callais Capital ever discussed the Financial Statement with Worley.

The most glaring omission on the Financial Statement from the viewpoint of Callais Capital is the secured debt owed by W Resources, LLC and guaranteed by Worley to Callais Capital, itself. Yet, Callais Capital never questioned Worley about this apparent omission. There is no distinction on the Financial Statement between Worley and his companies as to assets or debts. Even though Callais Capital knew of many of these distinctions, having received collateral on mortgages from W Resources, LLC, it never questioned Worley about this. It never even questioned Worley about the omission of his airplane, even though Callais Capital representatives had flown in it. The inaction of Callais Capital in performing the slightest due diligence should prevent it from securing a summary judgment.

(Doc. 6 at 13-14.)

Third, as to whether Worley had the requisite intent, Appellant maintains:

In this case, there was no intended deception as Worley didn't even know that Callais Capital had a copy of the Financial Statement. . . . Here, there is no undisputed evidence that Worley knew that Callais Capital had seen his Financial Statement, much less that they had relied on it for any purposes. Worley was not copied on the March 29, 2016 email from Hammer to Callais Capital transmitting the Financial Statement. Callais Capital has offered no explanation for this fundamental omission. Callais Capital cannot prove with undisputed evidence that Worley had the requisite "intent to deceive" when it has not been shown that he even knew of the transmission of the Financial Statement from Hammer until many months after the fact.

(Doc. 6 at 12-13.) Therefore, based on these disputes of material facts, Appellant states that summary judgment was not appropriate.

2. Appellee's arguments

Appellee argues that there are no genuine disputes of material facts and that the Court should affirm the Bankruptcy Court's ruling that Worley's indebtedness is nondischargeable in bankruptcy. (Doc. 7 at 18.) Appellee points out that there are no genuine disputes of material fact because:

Debtor admits that the Financial Statement was materially false; admits that he retained and paid Mr. Hammer; admits that Mr. Hammer was his agent; admits that Debtor shared the Financial Statement with Mr. Hammer; admits that Mr. Hammer

shared the Financial Statement with Callais; admits that he failed to read every single document of significance related to the loan and guaranty transactions with Callais; and admits that it was reasonable for Callais to rely upon the representations in the Financial Statement.

(Doc. 7 at 18.) Appellee maintains that each of the elements under 11 U.S.C. § 523 (a)(2)(B) were correctly determined by the Bankruptcy Court. Specifically, that (1) Worley's Financial Statement is a materially false, written statement respecting his financial condition; (2) Callais reasonably relied on Worley's Financial Statement; (3)  as a result of Worley's reckless disregard for the truth, as a matter of law, Worley intended to deceive Callais; and (4) Worley has no defense to Callais' nondischargeability claim.

First, Callais details that there is no dispute that the Financial Statement is a materially false written statement regarding Worley's financial condition. (Doc. 7 at 11.) Second, Appellee argues that Callais' reliance on the Financial Statement was reasonable because:

(1) prior business dealings and [Worley's] previous repayment of a million dollar loan, thereby establishing a relationship of trust between the parties; (2) the Financial Statement itself, indicated a net worth of more than $148 million; (3) the fact that [the] Financial Statement was signed by a licensed CPA, who was required by law to accurately represent information provided by the Debtor; (4) the fact that the March 4, 2016 email from [Worley's] CPA to [Worley], which [] Hammer forwarded to Callais, stated "see attached final copy of your compiled personal financial statement;" (5) Callais' prior first-hand exposure to Debtor's extraordinary wealth, including [Worley's] multi-million dollar airplane hangar; and (6) [Hammer's] repeated representations to Callais regarding Debtor's net worth.

(Doc. 7 at 12.) Appellee maintains that Appellant's arguments to the contrary are unavailing. For example, Appellee points out that given the history and course of dealing between the parties, it was not abnormal for Worley to not be copied on emails because he relied on Hammer as his representative and never spoke with or dealt with lenders personally. (Doc. 7 at 13.) In addition, Appellee notes that the "glaring omission" of the secured debt owed to Callais by W Resources, was not a glaring omission because Hammer's email transmitting the Financial Statement stated,

"The $3MM CMM loan is not reflected on his statement." (Doc. 7 at 14.) Moreover, Appellee

posits that there is no evidence, outside of Appellant's arguments, that Callais' due diligence was

lacking. (Doc. 7 at 14.) Therefore, Appellee maintains that the Bankruptcy Court properly found

that Callais reasonably relied on the Financial Statement.  (Doc. 7 at 14.)

Third, Appellee argues that as a result of Worley's reckless disregard for the truth, he

intended to deceive Callais as a matter of law. (Doc. 7 at 14.) Appellee asserts a "creditor can

establish intent to deceive by proving reckless indifference to, or reckless disregard of, the

accuracy of the information in the financial statement of the debtor when the totality of the

circumstances supports such an inference." (Doc. 7 at 14 (quoting *In re Perry*, 547 B.R. 650, 654

(Bankr. M.D. La. 2016)).) Further that as a matter of law, a "borrower's lack of care when

signing loan documents evidences a reckless disregard for the correctness of the information in

the application and thus establishes intent to deceive for purposes of applying section 523(a)(2)."

(Doc. 7 at 14-15 (quoting, *In re Perry*, 547 B.R. at 654).)

Appellee details that Worley had a "shocking degree of recklessness with respect to the

truth or falsity of the loan documents" he signed.  Appellee directs the Court to Worley's

deposition testimony that he never read the Unconditional SQOR Guarantee, or the Certification

Letter and when questioned, "even though you sign something, that's not a guaranty that the

contents of the document you signed are accurate?" Worley responded, "That's correct." (Doc. 7

at 15 (citing Doc. 39-4 in Adversary Pro. No. 18-1021 at 45:9-46:12; 106:15-107:19; and

107:20-23).) This testimony, Appellee argues is sufficient to show a reckless disregard for the

truth of the Financial Statement and other loan documents. (Doc. 7 at 16.) Further, Appellee

argues the Court should disregard Worley's argument that "he never intended to present the

Financial Statement to any potential lender" because there is undisputed evidence that shows by

11

March 7 , 2016 Worley was aware that Hammer was sharing the Financial Statement with other

lenders and did nothing to stop him. (Doc. 7 at 17.)

Last, Appellee asserts that Worley has no defense to Callais' claim. Appellee states that

the argument that Hammer was not authorized to share the Financial Statement is without merit

because: (1) Hammer testified that he was specifically authorized to share the Financial

Statement with Callais; (2) by March 7, 2016 Worley knew that Hammer was sharing the

Financial Statement with various lenders; (3) the argument was waived as an untimely

affirmative defense; and (4) Hammer had actual and apparent authority to provide the Financial

Statement to Callais and Worley is bound as the principal. (Doc. 7 at 17.)

### c. Applicable law

The Supreme Court has explained:

a central purpose of the Code is to provide a procedure by which certain insolvent
debtors can reorder their affairs, make peace with their creditors, and enjoy "a new
opportunity in life with a clear field for future effort, unhampered by the pressure
and discouragement of preexisting debt." *Local Loan Co. v. Hunt,* 292 U.S. 234,
244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). But in the same breath that we have
invoked this "fresh start" policy, we have been careful to explain that the Act limits
the opportunity for a completely unencumbered new beginning to the "honest but
unfortunate debtor." *Ibid.*

The statutory provisions governing nondischargeability reflect a congressional
decision to exclude from the general policy of discharge certain categories of
debts—such as child support, alimony, and certain unpaid educational loans and
taxes, as well as liabilities for fraud. Congress evidently concluded that the
creditors' interest in recovering full payment of debts in these categories
outweighed the debtors' interest in a complete fresh start.

*Grogan v. Garner*, 498 U.S. 279, 286–87 (1991). The nondischargeability provision in 11 U.S.C.

§ 523(a)(2)(B) excepts an individual debtor from discharge from any debt that is:

(2) for money, property, services, or an extension, renewal, or refinancing of credit,
to the extent obtained by-- . . .  (B) use of a statement in writing-- (i) that is
materially false; (ii) respecting the debtor's . . . financial condition; (iii) on which
the creditor to whom the debtor is liable for such money, property, services, or

credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive; . . .

11 U.S.C. § 523(a)(2)(B); *see Matter of Norris*, 70 F.3d 27, 29 (5th Cir. 1995) ("Section

523(a)(2)(B) of Title 11 of the United States Code creates a rule of nondischargeability for any

debt for money, property, services, or an extension, renewal, or refinancing of credit, to the

extent obtained, by use of a statement in writing— (i) that is materially false; (ii) respecting the

debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable

for such ... credit reasonably relied; and (iv) that the debtor caused to be made or published with

intent to deceive.") A creditor seeking to except a debt from discharge must prove each element

by a preponderance of the evidence. *Matter of Norris*, 70 F.3d 27, 29 (5th Cir. 1995).

A statement in writing is materially false respecting a debtor's financial condition when

"it 'paints a substantially untruthful picture of a financial condition by *misrepresenting*

*information of the type which would normally affect the decision to grant credit.*'" *In re Perry*,

547 B.R. 650, 654 (Bankr. M.D. La. 2016) (quoting, *Matter of Norris,* 70 F.3d 27, 30 (5th Cir.

1995)) (emphasis in original). As to the next element, a creditor's reasonable reliance, the Fifth

Circuit explained that a creditor's reasonable reliance

> should be judged in light of the totality of the circumstances. The bankruptcy court
> may consider, among other things: whether there had been previous business
> dealings with the debtor that gave rise to a relationship of trust; whether there were
> any "red flags" that would have alerted an ordinarily prudent lender to the
> possibility that the representations relied upon were not accurate; and whether even
> minimal investigation would have revealed the inaccuracy of the debtor's
> representations.

*Matter of Coston*, 991 F.2d 257, 261 (5th Cir. 1993). Last, as to the requisite intent under §

523(a)(2)(B), the Fifth Circuit explains, "A judge may look at the totality of the circumstances

and infer an intent to deceive when '[r]eckless disregard for the truth or falsity of a statement

combined with the sheer magnitude of the resultant misrepresentation may combine' to produce

such an inference. *In re Morrison*, 555 F.3d 473, 482 (5th Cir. 2009). Furthermore,

> [A] creditor can establish intent to deceive by proving reckless indifference to, or reckless disregard of, the accuracy of the information in the financial statement of the debtor when the totality of the circumstances supports such an inference. A borrower's lack of care when signing loan documents evidences a reckless disregard for the correctness of the information in the application and thus establishes intent to deceive for purposes of applying section 523(a)(2).

*In re Perry*, 547 B.R. 650, 654 (Bankr. M.D. La. 2016) (internal quotations and citations

omitted).

Although nondischargeability is a matter of bankruptcy law, whether there is an agency

relationship is a matter of state law. In *Bolous v. Morrison*, the Louisiana Supreme Court set out

the parameters of the agency relationship also known as mandate under the Louisiana Civil

Code. 503 So. 2d 1, 3 (La. 1987). The Louisiana Supreme Court stated:

> Mandate is an act by which one person, a principal, gives power to another, an agent, to transact for him and in his name one or several affairs. An agent's power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. As between principal and agent the limit of the agent's authority to bind the principal is governed by the agent's actual authority. As between the principal and third persons, the limit of an agent's authority to bind the principal is governed by his apparent authority. . . . For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent's authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent.

*Boulos v. Morrison*, 503 So. 2d 1, 3 (La. 1987) (internal citations omitted); *see Ledet v.*

*Fleetwood Enterprises, Inc.*, 245 F.3d 791 (5th Cir. 2000) ("Apparent agency is established by

the words and conduct of the parties and the circumstances of the case. An agency relationship

may be created even though there is no intent to do so.  However, [a]n agency relationship is

never presumed; it must be clearly established.") (internal quotations and citations omitted).

*d.  Analysis*

In short, the Court agrees with the findings and conclusions of the Bankruptcy Court.
However, the Court will address Appellant's arguments regarding whether there were genuine
disputes of material facts.

First, as to the agency relationship, to the extent that Appellant has not waived the issue
by not arguing it below, the Court concludes that Hammer had both actual and apparent authority
to act as Worley's agent in connection with obtaining financing from Callais. Worley's
deposition transcript repeatedly states that Hammer was his "representative" "liaison" and
"agent" in dealing with creditors to secure loans for SQOR, W Resources, Inc, and himself.
Further, Hammer's deposition testimony details that he acted as the "go-between" for Callais and
Worley on each of the financing arrangements. The documentary evidence attached to the
depositions—including emails between the SQOR board members, Hammer, and Worley—also
shows Hammer was involved in the transactions as Worley's agent for matters involving
financing from Callais. Moreover, the history and dealings of the parties, including the
previously paid loan from Callais to SQOR, which was facilitated by Hammer, granted Hammer
the apparent authority to act on Worley's behalf in obtaining financing from Callais. The
Bankruptcy Court, therefore did not err in determining that Callais had established that Hammer
had the actual and apparent authority to act as Worley's agent.

Second, whether Callais' reliance was reasonable, the Court is likewise unpersuaded by
Appellant's arguments. As an initial matter, the Court agrees with the Bankruptcy Court that
argument regarding Callais' secured loan being omitted is meritless. The email from Hammer to
Callais explains that the loan is omitted; therefore, its exclusion from the Financial Statement
would not raise a red flag. Further, the history and course of dealings between the parties
adequately explains why it was not a "red flag" that Worley was not included in the financing

15

discussions, because he had not previously been involved in those matters. Appellant's other "red flags" are equally unconvincing and do not change the Court's analysis that Callais reasonably relied on the Financial Statement.

Third, the Bankruptcy Court was correct in finding that Worley acted with a reckless disregard for the truth in causing the Financial Statement to be given to Callais and therefore as a matter of law acted with the requisite intent to deceive. Worley's actions demonstrate his cavalier and reckless disregard for the truth. First, when signing the engagement letter with the Accounting Firm, Worley agreed that the accuracy of the financial statement was his sole and exclusive responsibility, and that he was obligated to furnish the Accounting Firm with accurate information regarding his assets and liabilities; Worley did not furnish the Accounting Firm with accurate information. Next, on March 4, 2016, when Worley received the Financial Statement, he signed the Certification Letter and represented that all information he provided was true and correct; however, as he admitted, the information was not correct and the Financial Statement was materially false. The Financial Statement omitted millions of dollars in debt and incorrectly listed some assets, including mineral rights and subsidiary inventory, as unencumbered when, in fact, they served as security for other indebtedness.

Worley's explanation boils down to: although, the documents were false, he did not know they were false because he did not read them. Therefore, he could not intend to deceive because he was not even aware of the facts. The Court does not agree. *In re Tully*, 818 F.2d 106, 111 (1st Cir. 1987) ("A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements he has made under oath"). Worley is a highly sophisticated businessperson who was actively seeking financing for himself and the companies with which he was associated. Worley's pattern and practice of providing incomplete and false

16

documents to the Accounting Firm, failing to read the documents associated with his finances, and making representations without knowledge of the accuracy or veracity of the information demonstrates his reckless disregard for the truth.

Worley's assertion on appeal—that there is no undisputed evidence that Worley knew that Callais had seen the Financial Statement, much less that it relied on it for any purposes because he was not copied on the March 29, 2016 email from Hammer to Callais transmitting the Financial Statement—is unpersuasive. (Doc. 6 at 13.) The undisputed evidence shows that Worley knew by March 7, 2016 that Hammer was sharing the Financial Statement with prospective lenders. Thereafter, Worley did not stop Hammer from disclosing the Financial Statement to other lenders or withdraw Hammer's authority to act as his agent. Worley's refusal to take action to either stop Hammer from pursuing financing on his behalf with his false Financial Statement or to correct the Financial Statement with Callais again demonstrates his reckless disregard to the truth. *See In re Morrison*, 361 B.R. 107, 126 (Bankr. W.D. Tex. 2007), *aff'd sub nom. W. Builders of Amarillo, Inc. v. Morrison*, No. A-07-CA-292-SS, 2007 WL 9710033 (W.D. Tex. Aug. 8, 2007), *aff'd sub nom. In re Morrison*, 555 F.3d 473 (5th Cir. 2009) ("Where a debtor knew or should have known of errors in a financial statement and he fails to correct the error, it may be inferred that he has intended to deceive the creditor.")  Therefore, as the Bankruptcy Court correctly found, based on the totality of the circumstances, Worley acted with a reckless indifference for the truth and thereby intended to deceive Callais.

The Court finds that the Bankruptcy Court correctly determined that each of the elements under § 523(a)(2)(B) was met, and therefore, the judgment of the Bankruptcy Court is affirmed.

CONCLUSION

Accordingly,

**IT IS ORDERED** that the judgment of the Bankruptcy Court is **AFFIRMED.**

Signed in Baton Rouge, Louisiana, on March 5, 2020.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**